IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **11-cv-01609-JLK**

**I. JEWELL DANFORD**, an individual,
**THE DANFORD FAMILY TRUST,** and
**THE DANFORD MARITAL TRUST,**

    Plaintiffs,

v.

**JO ANN E. CHAMPLIN,** as Personal Representative of the Estate of Herbert H. Champlin,
**JO ANN E. CHAMPLIN,** as Trustee of the Herbert H. Champlin Revocable Trust of November 2007,
**HIRAM CHAMPLIN,** individually,
**JOEL D. CHAMPLIN,** individually,
**JANE D. KEELING,** individually,
**ALEC CHAMPLIN,** individually, and
**DANFORD-CHAMPLIN FARMS, LTD.,** a Colorado corporation,

    Defendants.
_____

ORDER REMANDING CASE TO STATE COURT
_____

**Kane, J..**

This action is currently before me on Defendants' Notice of Removal (doc. 1) and Response to Order to Show Cause (doc. 6). As I stated in my Order to Show Cause, there is some question regarding whether I have jurisdiction over Plaintiffs' cause of action. Specifically, it is unclear whether complete diversity exists between the parties. Based on the forthcoming discussion, I find that Defendants have failed to meet their burden of proving the jurisdictional prerequisites necessary for removal. Accordingly, it is ORDERED that this case is REMANDED summarily to the state court.

BACKGROUND

Plaintiffs' cause of action is premised on a decades-long business relationship between the deceased husbands of Plaintiff I. Champlin Danford and Defendant Jo Ann E. Champlin.  Beginning in 1966, Jack Danford, Mrs. Danford's husband, and Joe Champlin, Mrs. Champlin's father-in-law, purchased a 2,173 acre ranch (the "Lewis Ranch") in Adams County, Colorado.  After Mr. Champlin died soon after, his title to the ranch passed to his son and Mrs. Champlin's husband Herbert Champlin.  Mr. Danford and Herbert Champlin continued the earlier business relationship, purchasing a 1,973 acre ranch (the "Knowacki Ranch") located near the Lewis Ranch in 1972.

In 1976, Messrs. Danford and Champlin formed Danford-Champlin Farms, Ltd. ("D-C Farms"), a Colorado subchapter S corporation, with each splitting ownership and serving as officers and directors of the corporation.  D-C Farms then purchased a 3,440 acre ranch (the "Tupps Ranch"), which was also located in Adams County, Colorado.  After the formation of D-C Farms and the purchase of the Tupps Ranch, the parties pooled the expenses and income derived from the three ranches, and the three ranches were treated as a partnership with D-C Farms acting as the business entity for the three ranches.  In 1983, the parties sold a portion of the Tupps Ranch, approximately one-half, but they retained the water and mineral rights for the ranch.

As with many disputes resulting from long-running business relationships built upon amiable personal relationships, the events giving rise to Plaintiffs' complaint opened at the close.  After Mr. Danford's death in 1995, his interest in the ranches and D-C Farms passed to his spouse, Plaintiff I. Jewell Danford, individually and as Trustee of the Danford Marital

Trust and the Danford Family Trust. Mr. Champlin continued to organize the affairs of the partnership, and, perhaps in anticipation of his own demise, he began selling the ranches. In 1996, approximately 350 outlying acres of the Lewis and Knowacki Ranches were sold, but as part of the sale the mineral rights for the 350 acres were severed and split evenly between Mr. Champlin and Mrs. Danford. In 1997, Mr. Champlin arranged the sale of the remainder of the ranches, including the water rights and mineral rights not previously severed, to Schuck Transport Limited, LLP. After the sale, Mrs. Danford and Mr. Champlin entered into an agreement whereby all the assets, liabilities, profits, and losses owned by Mrs. Danford and the trust, Mr. Champlin, and D-C Farms were pooled into one collective unit. Ownership of this "unit" was split between Mrs. Danford and Mr. Champlin, with Mrs. Danford and the trusts owning a 40% interest and Mr. Champlin owning a 60% interest.

The parties' relationship existed in relative stasis for the next ten years, but in 2005 the parties distributed D-C Farms assets and Mr. Champlin convinced Mrs. Danford to sell her interest and the trust's interest in D-C Farms. This transaction, and the distribution of D-C Farm's assets, provide the subject matter of Plaintiffs' complaint. Plaintiffs allege that Mr. Champlin, who was responsible for maintaining the books and records for D-C Farms, failed to include the mineral rights severed from the Tupps Ranch in 1983 in the distribution of D-C Farms' assets.

After Mr. Champlin's death in 2008, his interest in D-C Farms passed to his spouse, Mrs. Jo Ann E. Champlin as Trustee for the Herbert H. Champlin Revocable Trust of 2007. In 2010, Doyle Danford, Mrs. Danford's son, was contacted by an oil and gas Landman who offered to enter into oil and gas leases related to the mineral rights that had been previously

severed from the Lewis, Knowacki, and Tupps Ranches. Mr. Danford directed the Landman to contact Mr. Champlin's oldest son to discuss the proposed leases, and D-C Farms entered into a lease for the severed mineral rights for approximately $1.9M. Plaintiffs have not received any portion of the proceeds from this lease agreement.

Plaintiffs argue that the mineral rights held by D-C Farms should have been included in the 2005 distribution of the corporation's assets. Thus, the proceeds from the lease of those rights should be distributed according to the 1997 agreement between Mrs. Danford and Mr. Champlin. As grounds therefore, Plaintiffs assert a variety of claims, including: a claim for declaratory judgment concerning the enforceability and the terms of the 1997 Agreement, a claim of breach of fiduciary duty, a claim of fraudulent inducement, a claim of negligent misrepresentation, a claim of mutual mistake, a claim of unilateral mistake, a claim of promissory estoppel, and a claim of unjust enrichment.

## ANALYSIS

To be removable, a civil action must satisfy the requirements for federal jurisdiction. 28 U.S.C. § 1441(a). Federal jurisdiction in the instant removal action is premised on diversity of citizenship under 28 U.S.C. § 1332, which requires the complete diversity of all parties and an amount in controversy greater than $75,000.

Defendants have the burden of establishing that the jurisdictional prerequisites of § 1332, specifically including the complete diversity of all named parties, have been satisfied. *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008). As Defendants acknowledge, D-C Farms is a Colorado corporation. Defendants argue, however, that D-C Farms should be disregarded for purposes of determining jurisdiction because it was

4

fraudulently joined for purposes of defeating removal. *Hann v. City of Clinton, Okla., ex rel. Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942) ( "the presence of a nominal party with no real interest in the controversy will be disregarded").

In order to establish fraudulent joinder, Defendants must show that Plaintiffs have failed to plead a cause of action against D-C Farms and that there is in fact no cause of action against D-C Farms. *Roe v. General American Life Ins.Co.*, 712 F.2d 450, 452 n.\* (10th Cir. 1983). The general presumption against removal jurisdiction cabins my review of Defendants' arguments. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Accordingly, all doubts are resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). "If there is even a possibility that the state court would find that the complaint states a cause of action against [D-C Farms], [I] must find that the joinder was proper and remand the case to state court." *Frontier Airlines, Inc. v. United Airlines, Inc.*, 758 F. Supp. 1399, 1404 (D. Colo. 1989).

As Defendants note, seven of Plaintiffs' eight causes of action fail to state a claim against D-C Farms. This is due, in part, to the fact that Mr. Champlin seemed to be negotiating and interacting with Mrs. Danford in his individual capacity throughout the distribution of assets and transfer of ownership. Nevertheless, it is uncontested that Mr. Champlin was concurrently serving as an officer of D-C Farms until the time of his death. If Mr. Champlin acted in his official capacity as an officer of D-C Farms in allegedly inducing Mrs. Danford's agreement to sell her interest in the corporation, D-C Farms is potentially

liable for his alleged misconduct or mistake.[1]  Thus, I find that, based on the facts alleged in Plaintiffs' complaint, there is at least some possibility that a state court would find that the complaint states a cause of action against D-C Farms.  Defendants have failed to demonstrate that D-C Farms was fraudulently joined for purposes of defeating removal jurisdiction.

## CONCLUSION

In light of Defendants' failure to demonstrate that jurisdiction in this Court is proper, Plaintiffs' cause of action is REMANDED to the District Court for the County of Adams, Colorado.


Dated July 14, 2011                                        BY THE COURT:

                                                           **s/John L. Kane**
                                                           Senior U.S. District Judge

---

[1] This point is underscored by Plaintiffs' Sixth Claim for Relief (Unilateral Mistake), in which they actually claim to have relied upon representations made by Mr. Champlin *and D-C Farms*, a fact curiously omitted from Defendants' recitation of Plaintiffs' claims.